IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMANTHA DONEKER and PHILIP ROMANEK | : : | CIVIL ACTION |
| v. | : : : | |
| COUNTY OF BUCKS, et al. | : : | NO. 13-1534 |

**MEMORANDUM**

**Padova, J.**  August 26, 2013

Plaintiffs Samantha Doneker and Philip Romanek bring this action alleging violations of their civil rights arising out of their July 26, 2011 arrests and imprisonment, pursuant to 42 U.S.C. § 1983, against the County of Bucks ("Bucks County"); the Bucks County Board of Commissioners (the "Board of Commissioners"); the Bucks County Sheriff's Office (the "Sheriff's Office"); Sheriff Edward J. Donnelly; Sergeant Gary K. Browndorf; and Deputies James McAndrew, William J. Klein, Daniel J. Boyle, and David Prudish. Presently before the Court are: (1) a Motion to Dismiss filed by Bucks County and the Board of Commissioners; and (2) a Motion to Dismiss filed by the Sheriff's Office and Edward J. Donnelly. For the following reasons, we grant both Motions to Dismiss.

**I.    BACKGROUND**

The First Amended Complaint ("FAC") alleges the following facts. On July 26, 2011, Defendants Sergeant Browndorf and Deputies McAndrew, Klein, Boyle, and Prudish (collectively the "Officers") arrived at Plaintiffs' home in Levittown, Pennsylvania, to arrest Plaintiff Philip Romanek. (FAC ¶ 15.) Romanek was discovered in the attic. (Id. ¶ 16.) Several of the Officers handcuffed Romanek behind his back and lowered him down from the attic. (Id.) Romanek was compliant, respectful, and did not resist arrest. (Id. ¶ 17.) While Romanek was being lowered from the attic, Sergeant Browndorf punched him in the chest without provocation.

(Id. ¶ 18.)  Plaintiff Samantha Doneker witnessed the punch, rushed towards Romanek, and made incidental contact with Sergeant Browndorf as she brushed past him.  (Id. ¶ 19.)  Sergeant Browndorf then grabbed Doneker, shoved her into a bathroom door, pulled her into his chest, and told her that she was under arrest for assaulting a sheriff.  (Id. ¶ 20.)  Sergeant Browndorf then handcuffed Doneker and removed her from the house.  (Id. ¶ 21.)

At the Bristol Township Police Department, Sergeant Browndorf lied to a Bristol Township detective by claiming that Romanek kicked him and that Doneker had assaulted him.  (Id. ¶ 26.)  Sergeant Browndorf and Deputy Boyle prepared criminal complaints against Doneker and Romanek, which falsely charged them with felony assault and other offenses.  (Id. ¶ 25.)  Doneker was fingerprinted and photographed at the Police Department, and was then transported to court for a preliminary arraignment.  (Id. ¶ 27.)  Doneker's bail was set at $100,000.00, but she was unable to post bail and had to spend four nights in prison.  (Id. ¶ 28.)

Plaintiffs' preliminary hearing was scheduled for August 23, 2011.  (Id. ¶ 29.)  Prior to that hearing, the Assistant District Attorney asked Sergeant Browndorf for incident reports relating to Plaintiffs' July 26, 2011 arrests, but none had been prepared.  (Id. ¶¶ 29-30.)  Deputies McAndrew, Klein, Boyle, and Prudish knew about the preliminary hearing, and knew that Plaintiffs did not assault Sergeant Browndorf, but did not prepare incident reports or attend the hearing.  (Id. ¶ 31.)  At the preliminary hearing, Sergeant Browndorf gave perjured testimony about the July 26, 2011 incident by testifying that Romanek kicked him in the chest and that he did not strike Romanek.  (Id. ¶¶ 32-33.)  He also gave perjured testimony that Doneker attacked him from behind, pushed him, and punched him in the back once or twice.  (Id. ¶ 35.)

2

A grand jury was convened to investigate Sergeant Browndorf. (Id. ¶ 36.) Deputy McAndrew truthfully testified before the grand jury that Doneker did not attack or assault Sergeant Browndorf. (Id.) An investigation conducted by a Bucks County detective revealed the truth behind the false charges against Doneker and Romanek, and Sergeant Browndorf was criminally charged with, among other crimes, perjury and assault. (Id. ¶ 37.) Sergeant Browndorf was convicted of perjury and simple assault, and sentenced to six to twelve months' imprisonment and two years of probation. (Id. ¶ 38.)

In the FAC, Plaintiffs assert § 1983 claims against the Officers for excessive force and false arrest and, in Count Three, assert claims against Bucks County, the Board of Commissioners, the Sheriff's Office, and Edward J. Donnelly for municipal and supervisory liability under § 1983.[1] Bucks County, the Board of Commissioners, the Sheriff's Office, and Edward J. Donnelly have moved to dismiss the claims against them for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. DelRio-

---

[1]In Count Three, Plaintiffs also request punitive damages, but have withdrawn that request in connection with their claims against the County. (Resp. to Bucks County's and Board of Commissioners' Mot. at 3 n.9.)

Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.  DISCUSSION

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

> District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted).

In Count Three, the FAC alleges that Bucks County, the Board of Commissioners, the Sheriff's Office, and Sheriff Edward J. Donnelly violated Plaintiffs' constitutional rights under § 1983 by: (1) failing to have a policy requiring officers to prepare incident reports following arrests and/or the use of force; and (2) failing to train and supervise officers regarding the appropriate use of force. The FAC further alleges in Count Three that Bucks County, the Board of Commissioners, and the Sheriff's Office violated Plaintiffs' constitutional rights under § 1983 by failing to have a policy regarding the use of force when making arrests. (FAC ¶¶ 71, 72, 75-76, 88.)

    A.    <u>Municipal Liability of Bucks County, the Board of Commissioners, and the Sheriff's Office</u>

Bucks County and the Board of Commissioners have moved to dismiss Count Three against them and, in a separate Motion, the Sheriff's Office and Donnelly have moved to dismiss Count Three against them as well. Plaintiffs' claim against Bucks County, the Board of Commissioners, and the Sheriff's Office are grounded on a theory of municipal liability. A municipal entity may only be liable under § 1983 when it implements or executes a policy,

regulation or decision officially adopted by the governing body or informally adopted by custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978). A municipal policy is defined as a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'" Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting Monell, 436 U.S. at 690). A municipal custom consists of "'such practices of state officials . . . [as are] so permanent and well settled as to constitute a custom or usage with the force of law.'" Id. (alterations in original) (quoting Monell, 436 U.S. at 691).[2]

Consequently, in order to succeed on a claim of municipal liability brought pursuant to § 1983, a plaintiff must first identify a municipal policy or custom that led to the alleged constitutional violation. The plaintiff must then establish that the municipal entity maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused. City of Canton v. Harris, 489 U.S. 378, 389 (1989); see also Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). Deliberate indifference may be established by evidence that policymakers were aware of the constitutional deprivations and of alternatives for preventing them, "'but either deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard.'" Beck, 89 F.3d at 972

---

[2] To state a claim against a municipal entity for failure to train, continued use of the deficient training program "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360 (quoting Bryan Cnty., 520 U.S. at 409). To state a claim against a municipal entity for failure to supervise, the entity must have had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." C.H. ex rel. Z.H. v. Olivia, 226 F.3d 198, 202 (3d Cir. 2000) (quotation omitted).

(quoting Simmons, 947 F.2d at 1064); see also Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." (citing City of Canton, 489 U.S. at 390 n.10)). In addition, a plaintiff must also prove that the municipal policy or custom was "the proximate cause of the injuries suffered." Beck, 89 F.3d at 972 n.6 (citation omitted).

Bucks County and the Sheriff's Office (the "Municipal Defendants") argue that we should dismiss the claims against them in Count Three because the FAC fails to state a plausible Monell claim.[3] They argue specifically that the FAC fails to allege sufficient facts to support Plaintiffs' claim that they employed a relevant policy, that any such policy caused the constitutional deprivations suffered by Plaintiffs, or that they maintained any such policy with deliberate indifference. As noted above, the FAC alleges that the Municipal Defendants violated Plaintiffs' constitutional rights by: (1) failing to have a policy regarding the use of force when making arrests; (2) failing to have a policy requiring officers to prepare incident reports following arrests and/or the use of force; and (3) failing to train and supervise officers regarding the appropriate use of force. (FAC ¶¶ 71, 72, 76.)

According to the FAC, the Municipal Defendants' policy, training, and supervisory failures were the proximate cause of Sergeant Browndorf's use of excessive force against

---

[3] Plaintiffs have voluntarily withdrawn their § 1983 claims against the Board of Commissioners. (Resp. to Bucks County's and Board of Commissioners' Mot. at 3 n.9.) We therefore only address Plaintiffs' § 1983 municipal liability claims against Bucks County and the Board of Commissioners.

7

Plaintiffs, as well as the reason that no incident reports were prepared in connection with his use of force. (Id. ¶¶ 29-30, 53, 65.) They therefore maintain that these failures were a proximate cause of Plaintiffs' injuries, both insofar as excessive force was used against them, and insofar as false charges were pursued against them due to the lack of incident reports to contradict Sergeant Browndorf's perjured testimony. (Id. ¶¶ 30-31, 75, 87-88.) We conclude that these allegations are sufficient to plausibly allege both the employment of relevant policies and that the policies were the proximate cause of Plaintiffs' injuries.

At the same time, however, we agree with the Municipal Defendants that the FAC fails to sufficiently allege that they maintained the alleged policies with deliberate indifference. The FAC alleges that the Municipal Defendants knew of "similar unlawful conduct in the past committed by deputies of the Bucks County Sheriff's Office," and that the Municipal Defendants tolerated "frequent and numerous acts of misconduct committed by the deputies. (Id. ¶¶ 84, 86.) These bare allegations fail to support Plaintiffs' claim of deliberate indifference because they do not give any further detail regarding the alleged "similar unlawful conduct," do not specify what kind of "misconduct" was previously committed by the deputies, and do not allege whether such misconduct was in any way similar to the Officers' improper use of excessive force or their failure to prepare incident reports in connection with Plaintiffs' arrest and imprisonment. These allegations are thus bereft of sufficient factual detail. See Washington v. City of Philadelphia, Civ. A. No. 11-3275, 2012 WL 85480, at *9 (E.D. Pa. Jan. 11, 2012) (finding that a bare allegation of "similar violations" is inadequate to allege deliberate indifference).

Plaintiffs nonetheless maintain that they have adequately alleged deliberate indifference on the part of the Municipal Defendants because the FAC alleges that in early 2010, Deputy

8

Klein complained to the Sheriff and a County Commissioner that the Sheriff's Office did not have policies related to the use of force and detention, and he expressed safety concerns for his fellow officers and citizens. (Id. ¶ 70.) The FAC also alleges that, on multiple occasions prior to Plaintiffs' arrest, Deputy McAndrew complained to his supervisors at the Sheriff's Office that it "did not have policies regarding the use of force when making arrests, and did not have written procedures governing the manner in which deputy sheriffs and other personnel were to perform their duties." (Id. ¶ 71.)

These allegations also fail to support Plaintiffs' claim against the Municipal Defendants because, to show deliberate indifference, the FAC must allege the Municipal Defendants maintained their policies with deliberate indifference to the constitutional deprivations that the policies caused. City of Canton, 489 U.S. at 389; see also Connick, 131 S. Ct. at 1360 (noting that a "pattern of similar constitutional violations by untrained employees" is ordinarily necessary to state a claim for failure to train); C.H., 226 F.3d at 202 (noting that "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents" is necessary to state a claim for failure to supervise). The allegations that two deputies complained about the lack of policies regarding the use of force do not satisfy Plaintiffs' pleading obligation to allege that the Municipal Defendants knew that the absence of those policies had caused similar prior constitutional violations by Bucks County police officers. See Pelzer v. City of Phila., 656 F. Supp. 2d 517, 533 (E.D. Pa. 2009) (finding that the City's knowledge of a report documenting the lack of relevant police department policies was insufficient to demonstrate deliberate indifference because it did not indicate that the lack of those policies caused any constitutional violations by the officers). We cannot reasonably infer

9

on the basis of these two complaints that the Municipal Defendants were deliberately indifferent to prior constitutional violations that resulted from their alleged failure to have these policies. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997) (observing that municipal entities' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish . . . deliberate indifference" (citing City of Canton, 489 U.S. at 390 n.10)).

We therefore conclude that the FAC fails to allege sufficient facts to state a plausible claim for municipal liability under § 1983 against Bucks County and the Sheriff's Office, and accordingly, we dismiss Count Three as to Bucks County and the Sheriff's Office on that basis. At the same time, we grant Plaintiffs leave to amend Count Three to state a cognizable municipal liability claim under § 1983 against Bucks County and the Sheriff's Office. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citation omitted) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

    B.    <u>Supervisory Liability Sheriff Edward J. Donnelly</u>

Plaintiffs' § 1983 claims against Sheriff Edward J. Donnelly are grounded on a theory of supervisory liability. An individual with supervisory authority may be liable for deliberate indifference to a violation of constitutional rights under two theories. Under the first theory, "policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720,

725 (3d Cir. 1989)). Under the second theory, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "[A]ctual knowledge can be inferred from circumstances other than actual sight." Baker, 50 F.3d at 1194. As to acquiescence, "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in . . . the subordinate's conduct." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997).

Donnelly argues that the FAC fails to state a claim against him upon which relief may be granted because: (1) the FAC does not adequately allege that he established a deficient policy or failed to train or supervise his officers; (2) the FAC does not allege that he was personally involved in the Officers' unconstitutional conduct towards Plaintiffs; and (3) he is entitled to qualified immunity. As noted above, the FAC's § 1983 claims against Donnelly are based on his alleged failure to have a policy requiring officers to prepare incident reports and his failure to train and supervise officers regarding the appropriate use of force. With respect to Donnelly's alleged failure to have a policy requiring officers to prepare incident reports, the FAC does not allege that such failure ever resulted in constitutional violations similar to that allegedly suffered by Plaintiffs. Therefore, under the first theory of supervisory liability, Plaintiffs' claims against Donnelly fail because the FAC does not allege that he maintained that policy with deliberate indifference. Under the second theory, Plaintiffs argue that Donnelly had knowledge of and acquiesced to the Defendant Officers' violations of citizens' rights in the past. However, to state

11

a claim of supervisory liability based on knowledge and acquiescence, Plaintiffs must allege that the Officers had previously violated citizens' rights, that Donnelly knew of those violations, and that he allowed the Officers' unconstitutional actions to continue. Because the FAC fails to adequately allege that any prior similar constitutional violations had been committed by the Defendant Officers in the past, we conclude that the FAC also fails to allege that Donnelly is liable under the second theory of supervisory liability based on knowledge and acquiescence. Thus, we find that the FAC fails to state a claim against Donnelly based on his failure to have a police regarding incident reports.

We further conclude that Plaintiffs' claims against Donnelly for failure to train and supervise regarding excessive force fail for the same reasons. To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train his employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick, 131 S. Ct. at 1359 (quoting City of Canton, 489 U.S. at 388 (alteration in original)). In other words, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Bryan Cnty., 520 U.S. at 409). Similarly, to state a claim under § 1983 for failure to supervise, a complaint must allege that the supervisor had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." C.H., 226 F.3d at 202 (quotation omitted). Because the FAC fails to allege that Donnelly had contemporaneous knowledge of the Officers' unconstitutional conduct towards Plaintiffs, or that there was a pattern of similar constitutional violations involving excessive force committed by the Officers in the past, we conclude that the FAC fails to

adequately allege a claim against Donnelly under § 1983 for failure to train or failure to supervise.[4] We therefore dismiss Count Three as to Donnelly, and give Plaintiffs leave to amend Count Three to state a cognizable claim under § 1983 against Donnelly.[5] Alston, 363 F.3d at 235.

## IV. CONCLUSION

For the foregoing reasons, we grant both Motions to Dismiss. An appropriate order follows.

BY THE COURT:

/s/John R. Padova
_____
John R. Padova, J.

---

[4]The FAC similarly fails to allege the deliberate indifference element of Plaintiffs' claims against the Municipal Defendants and Donnelly based on single incident liability. Washington v. City of Philadelphia, Civ. A. No. 11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012) ("To establish deliberate indifference from a single incident, a plaintiff must show that the [] failure to train was obviously going to lead to the constitutional violations alleged.") Based on the allegations in the FAC, we cannot conclude at this time that the Defendants' failure to train was "obviously" going to lead to Plaintiffs' alleged injuries. See Connick, 131 S. Ct. at 1365.

[5]Donnelly also argues that he is entitled to qualified immunity. Because we have dismissed all claims against Donnelly, we do not reach this argument in connection with the instant Motion.