IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMANTHA DONEKER and PHILIP ROMANEK | : : : | CIVIL ACTION |
| v. | : : | |
| COUNTY OF BUCKS, ET AL. | : : : | NO.  13-1534 |

## MEMORANDUM

Padova, J.                                                              June 10, 2014

Plaintiffs Samantha Doneker and Philip Romanek bring this 42 U.S.C. § 1983 action

alleging violations of their civil rights arising out of their July 26, 2011 arrests and

imprisonment.   The Defendants are the County of Bucks ("Bucks County"); the Bucks County

Sheriff's Office (the "Sheriff's Office") (together with Bucks County, the "Municipal

Defendants"); Sheriff Edward J. Donnelly; Sergeant Gary K. Browndorf; Deputy James

McAndrew; Deputy William J. Klein; Deputy Daniel J. Boyle, IV; and Deputy David Prudish.

Presently before the Court are two Motions to Dismiss Count Three of the Second Amended

Complaint (the "SAC"), one filed by Bucks County and the other filed by Sheriff Donnelly and

the Sheriff's Office.  For the following reasons, we grant both Motions.

## I.     BACKGROUND

### A.     Factual Background

The SAC alleges the following facts.  On July 26, 2011, Sergeant Browndorf and

Deputies McAndrew, Klein, Boyle, and Prudish (together, the "Defendant Officers") arrived at

Plaintiffs' home in Levittown, Pennsylvania, to arrest Plaintiff Romanek.  (SAC ¶ 15.)  The

Defendant Officers found Romanek in the attic.  (Id. ¶ 16.)  Several of the Defendant Officers

handcuffed Romanek behind his back and lowered him down from the attic.  (Id.)  Romanek was

compliant, respectful, and did not resist arrest.  (Id. ¶ 17.)  While Romanek was being lowered

from the attic, Sergeant Browndorf punched Romanek in the chest without provocation.  (Id. ¶ 18.)  Plaintiff Doneker witnessed the punch, rushed towards Romanek, and made incidental contact with Sergeant Browndorf as she brushed past him.  (Id. ¶ 19.)  Sergeant Browndorf grabbed Doneker, shoved her into a bathroom door, pulled her into his chest, and told her that she was under arrest for assaulting a sheriff.  (Id. ¶ 20.)  Sergeant Browndorf then handcuffed Doneker and removed her from the house.  (Id. ¶ 22.)

Doneker was then transported to the Bristol Township Police Department.  (Id. ¶ 23.)  She complained to the deputies who were transporting her about her unlawful arrest.  (Id.)  Romanek also complained to the deputies about Sergeant Browndorf's unlawful assault on him, but no one responded to either of their complaints.  (Id. ¶¶ 23-24.)  Sergeant Browndorf and Deputy Boyle subsequently prepared criminal complaints against Plaintiffs which falsely charged them with felony assault and other offenses.  (Id. ¶ 25.)  Sergeant Browndorf also falsely reported to a Bristol Township detective that Romanek had kicked him and that Doneker had assaulted him.  (Id. ¶ 26.)  Doneker was fingerprinted and photographed at the Bristol Township Police Department, and was then transported to court for a preliminary arraignment.  (Id. ¶ 27.)  Her bail was set at $100,000.00.  (Id. ¶ 28.)   She was unable to post bail and had to spend four nights in prison.  (Id.)

Plaintiffs' preliminary hearing on the charges brought against them by Sergeant Browndorf was scheduled for August 23, 2011.  (Id. ¶ 29.)  Prior to that hearing, the Assistant District Attorney asked Sergeant Browndorf for incident reports regarding the charges against Plaintiffs, but none had been prepared.  (Id. ¶ 30.)  Deputies McAndrew, Klein, Boyle and Prudish knew about the preliminary hearing, and knew that Plaintiffs did not assault Sergeant Browndorf, but did not prepare incident reports or attend the preliminary hearing.  (Id. ¶ 31.)  At

the preliminary hearing, Sergeant Browndorf falsely testified that Romanek kicked him in the chest on July 26, 2011 and that he did not strike Romanek.  (Id. ¶¶ 32-33.)  He also falsely testified that Doneker had attacked him from behind, pushed him, and punched him in the back once or twice.  (Id. ¶ 35.)

A grand jury was convened to investigate Sergeant Browndorf's acts of perjury.  (Id. ¶ 36.)  Deputy McAndrew truthfully testified before the grand jury that Doneker did not attack or assault Sergeant Browndorf.  (Id.)  After an investigation by a Bucks County detective revealed that Sergeant Browndorf had falsely charged Doneker and Romanek, Sergeant Browndorf was charged with perjury and assault.  (Id. ¶ 37.)  He was convicted, and sentenced to six to twelve months' imprisonment, followed by two years of probation.  (Id. ¶ 38.)

The SAC asserts three causes of action: a claim brought pursuant to 42 U.S.C. § 1983 by Doneker against the Defendant Officers for excessive force and false imprisonment in violation of the Fourth Amendment (Count One); a claim brought pursuant to 42 U.S.C. § 1983 by Romanek against the Defendant Officers for excessive force (Count Two); and a claim by both Plaintiffs against Sheriff Donnelly and the Municipal Defendants for municipal and supervisory liability pursuant to 42 U.S.C. § 1983 (Count Three).

> B.      Procedural Background

Plaintiffs filed their original Complaint on March 25, 2013, and filed a First Amended Complaint on May 16, 2013.  Municipal Defendants and Sheriff Donnelly moved to dismiss the claims asserted against them in Count Three of the First Amended Complaint.  On August 26, 2013, we granted their motions and dismissed Count Three of the First Amended Complaint without prejudice, and with leave to file a Second Amended Complaint stating cognizable § 1983 claims against the Municipal Defendants and Sheriff Donnelly.  Plaintiffs filed their SAC on

September 9, 2013.  The Sheriff's Office and Sheriff Donnelly filed a Motion to Dismiss Count Three of the SAC on September 26, 2013; Bucks County filed a Motion to Dismiss Count Three of the SAC on October 7, 2013.

## II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  In order to state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted).

Count Three of the SAC alleges that the Municipal Defendants and Sheriff Donnelly violated Plaintiffs' constitutional rights under § 1983 by: (1) adopting and tolerating a policy of retaliation against deputies who report incidents of misconduct; (2) failing to adopt policies regarding the use of force and the preparation of incident reports; and (3) failing to properly train and supervise deputies regarding the proper use of force, the preparation of incident reports, and the reporting of misconduct.  (SAC ¶¶ 70, 85, 97.)

A.    <u>Municipal Liability</u>

A municipal entity may only be liable under § 1983 when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91, 694 (1978).  A municipal policy is defined as a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'"  <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting <u>Monell</u>, 436 U.S. at 690).  A municipal custom consists of "'such practices of state officials . . . [as are] so permanent and well settled as to constitute a custom or usage with the force of law.'"  <u>Id.</u> (alterations in original) (quoting <u>Monell</u>, 436 U.S. at 691).

Consequently, in order to succeed on a claim of municipal liability brought pursuant to § 1983, a plaintiff must first identify a municipal policy or custom that led to the alleged constitutional violation.   The plaintiff must then "'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'"  <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000) (quoting <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 404 (1997)).  If "the policy or custom does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'"  <u>Id.</u> (alteration in original) (quoting <u>Bryan Cnty.</u>, 520 U.S. at 407, and citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989)).  Deliberate indifference may be established by evidence that policymakers were aware of the constitutional deprivations and of alternatives for preventing them, "'but either deliberately choose not to pursue these alternatives or acquiesced in *a long-standing policy or custom of inaction* in this regard.'"  <u>Beck v. City of Pittsburgh</u>, 89 F.3d at 966, 972 (3d Cir.

1996) (quoting <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1064 (3d Cir. 1991)); <u>see also</u> <u>Bryan Cnty.</u>, 520 U.S. at 407 ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action -- the 'deliberate indifference' -- necessary to trigger municipal liability." (citing <u>City of Canton</u>, 489 U.S. at 390 n.10)).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011). To state a claim against a municipal entity for failure to train, the complaint must allege facts establishing that the municipality's failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" <u>Id.</u> (second alterations in original) (quoting <u>City of Canton</u>, 489 U.S. at 388). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." <u>Id.</u> at 1360 (quoting <u>Bryan Cnty.</u>, 520 U.S. at 409).

### 1.     The Policy of Retaliation

The Municipal Defendants argue that Plaintiffs' claim for municipal liability based on maintaining a policy of retaliation should be dismissed because the SAC does not state a facially plausible claim that the Municipal Defendants maintained the alleged policy of retaliation with deliberate indifference. The SAC alleges that the Municipal Defendants employed a policy of retaliation against deputies who reported misconduct by fellow deputies. (SAC ¶¶ 70-82.)

Specifically, the SAC alleges that, prior to the incident in this case, Lieutenant Waltman, a supervisor, retaliated against Deputy McAndrew for reporting that a deputy had fallen asleep in a courtroom while watching prisoners.  (Id. ¶ 75.)  The retaliation against Deputy McAndrew included having his fuel card (which was used for fueling his work vehicle) disabled, as well as refusal to replace Deputy McAndrew's work vehicle.  (Id. ¶¶ 75-76.)  The SAC alleges that Deputy Klein complained to Sergeant Browndorf about Lieutenant Waltman's acts of retaliation. (Id. ¶ 72.)  The SAC further alleges that Deputy Stephanie Fusco was retaliated against after filing an EEOC complaint for gender discrimination.  (Id. ¶¶ 78-79.)  The SAC alleges that, due to the alleged retaliation policy, the Defendant Officers failed to report the excessive use of force and false imprisonment of Plaintiffs, despite knowing the truth about what occurred.  (Id. ¶¶ 107-09.)

We agree with the Municipal Defendants that the SAC fails to plead sufficient facts to establish that the Municipal Defendants maintained the alleged policy of retaliation with deliberate indifference.  As we noted above, where, as here, "the policy or custom does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'"  Berg, 219 F.3d at 276 (quoting Bryan Cnty., 520 U.S. at 407, and citing City of Canton, 489 U.S. at 389); see also Thomas v. Cumberland Cnty., -- F.3d --, 2014 WL 1395666, at *4 (3d Cir. 2014) ("[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (alteration in original) (internal quotation omitted)).  In this case, the only alleged prior incidents of retaliation involved claims of lack of alertness at work and gender discrimination.  (SAC ¶¶ 75, 78-79.) These alleged prior incidents are wholly different from the constitutional injuries allegedly

8

suffered by Plaintiffs, as the prior incidents involved only internal personnel matters and did not concern constitutional violations.  Thus, even if the Municipal Defendants had a policy of retaliation with respect to the reporting of internal personnel matters, the SAC alleges no facts that, if true, could establish that the "known or obvious consequences" of such a policy would be that officers would fail to report constitutional violations such as excessive force and false imprisonment based on fear of retaliation and, in turn, more such constitutional violations would occur.  Berg, 219 F.3d at 276; see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1145 (9th Cir. 2012) ("[T]he absence here of any evidence of a pattern [of similar constitutional violations] makes it far less likely that [the plaintiff] can prove [the defendant] was 'on actual or constructive notice' that its policy would lead to constitutional violations.") (quoting Farmer v. Brennan, 511 U.S. 825, 841 (1994)).  Accordingly, we conclude that the SAC fails to state a facially plausible § 1983 claim for municipal liability based on an alleged policy of retaliation.

2.     Lack of Policies and Failure to Train and Supervise

As we noted above, the SAC asserts two further bases for municipal liability: (1) failure to implement policies regarding the proper use of force and the preparation of incident reports and (2) failure to properly train and supervise Sheriff's deputies regarding the proper use of force, the preparation of incident reports, and the reporting of misconduct.  The Municipal Defendants argue that the Plaintiffs' claims for municipal liability on these bases should be dismissed because the SAC fails to allege sufficient facts that, if true, could establish that the Municipal Defendants acted with deliberate indifference when they failed to implement necessary policies and failed to train and supervise their deputies.

The SAC alleges that the Municipal Defendants failed to implement policies regarding the proper use of force and the preparation of incident reports, and failed to train and supervise

deputies regarding the proper use of force, the preparation of incident reports, and the reporting of misconduct.  (SAC ¶¶ 83-84, 86, 97, 118-19.)  Specifically, it asserts that Deputy Klein complained to Sheriff Donnelly and a County Commissioner in 2010 about the lack of policies relating to the use of force, and that Deputy McAndrew lodged similar complaints with his supervisors and the Sheriff's Office.  (Id. ¶¶ 83-84.)  According to the SAC, there would not have been a two month delay in addressing Plaintiffs' injuries if the Sheriff's Office had implemented the necessary policies, training, and supervision.  (Id. ¶¶ 87-88, 121.)  The SAC also alleges that the absence of relevant policies and lack of training and supervision resulted in Plaintiffs' injuries.  (Id. ¶¶ 108-09, 121, 127, 135.)  The SAC recounts a previous incident involving Deputy Boyle and Sergeant Browndorf, which resulted in a lawsuit against Bucks County (the "Evans incident"), and avers that the incident demonstrates that the Municipal Defendants were deliberately indifferent to prior constitutional deprivations.  (Id. ¶¶ 110-14.)  Specifically, with respect to the Evans incident, that Deputy Boyle failed to report that Sheriff's deputies illegally forced their way into a residence, unlawfully detained the occupants and conducted an illegal search while searching for an individual who was not present.  (Id. ¶ 113.)  The SAC further alleges that the Evans incident took place on June 23, 2011, approximately one month prior to Plaintiffs' arrests.  (Id. ¶ 111.)

We agree with the Municipal Defendants that the SAC's allegations are insufficient to state a plausible claim that the Municipal Defendants acted with deliberate indifference when they failed to implement policies regarding the proper use of force and the preparation of incident reports, and when they failed to train and supervise deputies regarding the proper use of force, the preparation of incident reports, and the reporting of misconduct.  As we noted above, where, as here, "the policy or custom does not facially violate federal law, causation can be

established only by 'demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" Berg, 219 F.3d at 276 (quoting Bryan Cnty., 520 U.S. at 407, and citing City of Canton, 489 U.S. at 389 (1989)).

In this case, the only alleged prior incident of unlawful conduct resulting from the Municipal Defendants' lack of policies and failure to train is the Evans incident. However, the SAC does not allege that the Municipal Defendants were aware that there were allegations of unlawfulness in connection with the Evans incident at any point before Plaintiffs' alleged injuries occurred on July 26, 2011. (SAC ¶¶ 133-34, Ex. M.) Indeed, the SAC asserts that the Evans lawsuit was not filed until January 2012, approximately six months after Plaintiffs' alleged injuries occurred. (Id. ¶ 15.) Because the SAC does not allege any facts that could establish that the Municipal Defendants were aware of the assertions of misconduct in the Evans incident, or any other prior incidents of misconduct resulting from their failure to adopt policies and failure to train and supervise deputies prior to the time of Plaintiffs' injuries, we conclude that the SAC has not alleged sufficient facts to state a plausible claim that the Municipal Defendants were deliberately indifferent to "the known or obvious consequences" of those failures. Berg, 219 F.3d at 276; see also Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) ("[T]o sustain a § 1983 claim for municipal liability, the plaintiff must 'simply establish a municipal custom coupled with causation -- i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" (emphasis added) (quoting Bielevicz v. Dubinon, 915 F.3d 845, 851 (3d Cir. 1990)). Therefore, we conclude that the SAC fails to state a facially plausible claim of municipal liability under § 1983 based on the failure to implement necessary policies and failure to train and supervise deputies. As we have already determined that the SAC

fails to state a facially plausible § 1983 claim for municipal liability based on a policy of retaliation, we grant the Municipal Defendants' Motions to Dismiss Count Three of the SAC.

      B.    Supervisory Liability

Plaintiffs' § 1983 claims against Sheriff Donnelly are grounded on a theory of supervisory liability.  Individual defendants who are "policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).  An individual defendant who is "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)).  "[A]ctual knowledge can be inferred from circumstances other than actual sight."  Baker, 50 F.3d at 1194.  As to acquiescence, "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in . . . the subordinate's conduct."  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), overruled on other grounds, Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 60 (2006).

In order to state a § 1983 claim against a supervisor for failure to train, a complaint must allege that the supervisor's failure to train his employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  Connick, 131 S. Ct. at 1359 (alteration in original) (quoting City of Canton, 489 U.S. at 388 (alteration in

original)).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Id. (quoting Bryan Cnty., 520 U.S. at 409).  Moreover, in order to state a claim under § 1983 for failure to supervise, a complaint must allege that the supervisor had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000) (quotation omitted).

Count Three alleges that Sheriff Donnelly violated Plaintiffs' constitutional rights by: (1) adopting and tolerating a policy of retaliation against deputies who report incidents involving coworkers; (2) failing to adopt and implement policies relating to the use of force and the preparation of incident reports; and (3) failing to properly train and supervise deputies regarding the appropriate use of force, the preparation of incident reports, and the reporting of misconduct. Sheriff Donnelly argues that the claims asserted against him in Count Three should be dismissed because the SAC does not allege sufficient facts to establish that he acted with deliberate indifference or that he was personally involved in the alleged violations of Plaintiffs' constitutional rights.[1]

### 1.      The Policy of Retaliation and Lack of Policies

#### a.      Deliberate Indifference to the Policy of Retaliation

Sheriff Donnelly argues that Plaintiffs' claim in Count Three that he is subject to supervisory liability for maintaining a policy of retaliation should be dismissed because it fails to adequately allege that there was a policy of retaliation, that such policy caused Plaintiffs' alleged injuries, and that Sheriff Donnelly was deliberately indifferent to that  policy.  The SAC asserts

---

[1] Sheriff Donnelly also argues that the claims asserted against him in Count Three of the SAC should be dismissed because he is entitled to qualified immunity.  However, since we are granting the motion to dismiss the claims against him on other grounds, we need not reach this argument.

that Sheriff Donnelly adopted and tolerated a policy of retaliation against deputies who reported misconduct by fellow deputies, that Sheriff Donnelly used this policy of retaliation to hide evidence of misconduct while it was under investigation, and that the policy became more pronounced over time. (SAC ¶¶ 70-71.) The SAC also contains factual allegations regarding two specific incidents of such retaliation. The SAC alleges that, prior to the incident in this case, Lieutenant Waltman, a supervisor, retaliated against Deputy McAndrew for reporting that a deputy had fallen asleep in a courtroom while watching prisoners. (Id. ¶ 75.) The retaliation against Deputy McAndrew included having his fuel card (which was used for fueling his work vehicle) disabled, as well as refusal to replace Deputy McAndrew's work vehicle. (Id. ¶¶ 75-76.) The SAC alleges that Deputy Klein complained to Sergeant Browndorf about Lieutenant Waltman's acts of retaliation. (Id. ¶ 72.) The SAC, however, does not allege that Sheriff Donnelly was aware of, or personally involved in, the alleged retaliation. The SAC also alleges that Deputy Fusco was subjected to retaliation after she filed an EEOC complaint for gender discrimination in 2007. (Id. ¶ 79, Ex. D.) According to the SAC, Sheriff Donnelly refused to speak to Deputy Fusco after she filed her complaint, and she was denied certain rights and privileges afforded to other employees. (Id.) The SAC alleges that the Sheriff's Office intended this policy of retaliation to deter employees from reporting misconduct, including the constitutional violations suffered by Plaintiffs. (Id. ¶ 80.) Finally, the SAC alleges that by adopting and implementing a policy of punishing deputies who reported the constitutional violations of other deputies, Sheriff Donnelly acquiesced to the violations of Plaintiffs' constitutional rights. (Id. ¶ 132.)

We agree with Sheriff Donnelly that the SAC fails to state a facially plausible § 1983 claim against him for supervisory liability based on his deliberate indifference to a policy of

retaliation.  As we noted above, a supervisor may be liable "under § 1983 if it is shown that such defendant, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  A.M., 372 F.3d at 586 (alteration in original) (internal quotations omitted).  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Thomas, 2014 WL 1395666, at *4 (internal quotation omitted).  In this case, the only two alleged prior incidents of retaliation involved Deputy Klein's complaint to Sergeant Browndorf that Lieutenant Waltman's retaliated against Deputy McAndrew for reporting a colleague's lack of alertness at work and Deputy Fusco's claims that she was punished for reporting gender discrimination.  The SAC does not allege that Sheriff Donnelly was aware of Deputy Klein's complaints that Lieutenant Waltman retaliated against Deputy McAndrew.  Sheriff Donnelly may be found to be deliberately indifferent to constitutional deprivations caused by a policy of retaliation only if he were aware of that policy of retaliation.  See Beck, 89 F.3d at 972 (quoting Bielevicz, 915 F.3d at 851).  Accordingly, in the absence of any allegations that Sheriff Donnelly knew of, or was aware of, Deputy Klein's alleged complaints to Sergeant Browndorf about Lieutenant Waltman's retaliatory conduct, the allegations concerning those complaints do not provide support for a conclusion that Sheriff Donnelly was deliberately indifferent to a policy of retaliation.

Likewise, the SAC's allegations regarding retaliation against Deputy Frusco due to her claims of gender discrimination do not support the assertion that Sheriff Donnelly was deliberately indifferent to a policy of retaliation.  While Sheriff Donnelly was allegedly aware of the retaliation against Deputy Fusco, since he allegedly participated in it, that incident involved retaliation in response to an internal personnel matter and did not involve Sheriff's deputies

violating the constitutional rights of individuals who were not employed by the Sheriff's Office. The SAC does not allege any facts that support the assertion that the alleged policy of retaliation against individuals who complained about misconduct involving internal personnel matters could lead to wholly dissimilar violations of the constitutional rights of non-employees. We conclude, therefore, that the incidents described in the SAC do not constitute a "pattern of similar constitutional violations" that would support a claim for supervisory liability against Sheriff Donnelly based on a policy of retaliation. Connick, 131 S. Ct. at 1359 (quoting Bryan Cnty., 520 U.S. at 409).; see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1145 (9th Cir. 2012) ("[T]he absence here of any evidence of a pattern [of similar constitutional violations] makes it far less likely that [the plaintiff] can prove [the defendant] was 'on actual or constructive notice' that its policy would lead to constitutional violations.") (quoting Farmer v. Brennan, 511 U.S. 825, 841 (1994)). Thus, we conclude that the SAC fails to allege sufficient facts to state a facially plausible § 1983 claim for supervisory liability against Sheriff Donnelly based on his deliberate indifference to a policy of retaliation.

b.      Deliberate Indifference to the Lack of Policies

Sheriff Donnelly argues that Plaintiffs' claim in Count Three that he is subject to supervisory liability for failure to implement policies relating to the use of force and the preparation of incident reports should be dismissed because the SAC fails to plausibly allege that he acted with deliberate indifference in this regard. The SAC alleges that the Sheriff's Office failed to implement policies regarding the proper use of force and the preparation of incident reports. (SAC ¶¶ 85-86.) In early 2010, Deputy Klein complained to Sheriff Donnelly and a County Commissioner that the Sheriff's Office lacked such policies, and that the lack of policies endangered deputies and citizens and posed a liability risk for the Sheriff's Office. (Id. ¶ 83.)

Deputy Klein later testified under oath to his belief that, if a policy relating to the proper use of force and the preparation of incident reports had been in place at the time of Doneker's arrest, there would not have been a two month delay in addressing Sergeant Browndorf's actions and Doneker would not have spent four days in jail.  (Id. ¶¶ 87-88, Ex. E.)  Deputy McAndrew also complained to the Sheriff's Office about the lack of policies regarding the use of force on multiple occasions.  (Id. ¶ 84.)  The SAC also alleges that in June 2011, one month prior to this incident, Deputy Boyle submitted a false incident report in connection with the Evans incident. (Id. ¶¶ 110-13, Ex. I.)  The SAC alleges that the incident report regarding the Evans incident failed to note that Sheriff's deputies under the supervision of Sergeant Browndorf illegally forced their way into an apartment that they illegally searched while illegally detaining the occupants.  (Id. ¶¶ 112-14.)  The SAC also alleges that Sheriff Donnelly has admitted that the Sheriff's Office did not have a written policy in place regarding the preparation of incident reports in July 2011.  (Id. ¶ 89, Ex. F.)

We agree with Sheriff Donnelly that the SAC fails to state a plausible § 1983 claim against him for supervisory liability based on his deliberate indifference to the need for a policy regarding the proper use of force and the preparation of incident reports.  As we noted above, "policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M., 372 F.3d at 586 (alteration in original) (internal quotation omitted).  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thomas, 2014 WL 1395666, at *4 (internal quotation omitted).  The SAC only alleges one prior incident of unlawful conduct resulting from Sheriff Donnelly's failure to implement policies: the Evans

incident.  However, the SAC does not allege that Sheriff Donnelly was aware that there were allegations of unlawfulness in connection with the Evans incident at any point before the Evans lawsuit was filed in January 2012, approximately six months after Doneker's arrest.  (SAC ¶¶ 15, 133-34, Ex. M.)  Because the SAC does not allege that Sheriff Donnelly was aware of the assertions of misconduct in the Evans incident, or of any other prior incidents of misconduct resulting from his failure to adopt policies regarding the use of force and the preparation of incident reports, prior to the time of Plaintiffs' injuries, we conclude that the SAC has not alleged facts that, if true, would plausibly establish that Sheriff Donnelly "disregarded a known or obvious consequence of his action."  <u>Thomas</u>, 2014 WL 1395666, at *4 (quotation omitted).  Thus, we conclude that the SAC fails to plausibly allege facts that Sheriff Donnelly was deliberately indifferent to the consequences of his failure to maintain policies regarding the proper use of force and the preparation of incident reports.  We further conclude, accordingly, that the SAC fails to allege sufficient facts to state a facially plausible § 1983 claim for supervisory liability against Sheriff Donnelly based on his deliberate indifference to the lack of necessary policies.

c.   <u>Personal Involvement</u>

We also agree with Sheriff Donnelly that the SAC fails to state a facially plausible § 1983 claim against him based on his personal involvement in the alleged violations of Plaintiffs' constitutional rights.  As noted above, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  <u>A.M.</u>, 372 F.3d at 586.  The SAC does not allege that Sheriff Donnelly participated in violating Plaintiffs' rights, directed others to violate them, or had knowledge of and acquiesced in the Defendant

Officers' alleged constitutional violations in this case.  Thus, the SAC fails to state a plausible claim against Sheriff Donnelly based on his personal involvement in the alleged violation of Plaintiffs' constitutional rights.

    2.  <u>Failure to Train and Supervise</u>

   Sheriff Donnelly further argues that we should dismiss Plaintiffs' claim against him for failure to train and supervise officers regarding the proper use of force, the preparation of incident reports and the reporting of misconduct because the SAC does not adequately allege that he acted with deliberate indifference to his failure to train and supervise his deputies or that he had contemporaneous knowledge of the alleged violations of Plaintiffs' injuries.  As we noted above, in order to state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train his employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  <u>Connick</u>, 131 S. Ct. at 1359 (alteration in original) (quoting <u>City of Canton</u>, 489 U.S. at 388 (alteration in original)).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  <u>Id.</u> (quoting <u>Bryan Cnty.</u>, 520 U.S. at 409).  Moreover, in order to state a claim under § 1983 for failure to supervise, a complaint must allege that the supervisor had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  <u>C.H.</u>, 226 F.3d at 202 (quotation omitted).

   The SAC alleges that Sheriff Donnelly failed to train his deputies on the proper use of force, the preparation of incident reports, and the reporting of misconduct.  (<u>Id.</u> ¶¶ 97, 136.)  The SAC further alleges that the failure to properly train and supervise led Sergeant Browndorf to use excessive force and illegally detain Doneker because there were no foreseeable consequences for

his illegal actions.  (Id. ¶ 119.)  In addition, the SAC asserts that Sheriff Donnelly's failure to properly train and supervise his deputies caused the Defendant Officers involved in Doneker's arrest to fail to report Sergeant Browndorf's illegal actions, thus prolonging Doneker's unlawful detention. (Id. ¶¶ 120-121.)  According to the SAC, Sheriff Donnelly's conduct was deliberately indifferent to Plaintiffs' constitutional rights, and Sheriff Donnelly should have foreseen that his tolerance of repeated misconduct would facilitate future misconduct.  (Id. ¶¶ 122, 124.)

We agree with Sheriff Donnelly that the SAC fails to state a § 1983 claim for supervisory liability against him based on his failure to train and supervise his deputies because it does not adequately allege that he acted with deliberate indifference.  The only prior unlawful conduct that the SAC alleges to constitute a pattern of similar constitutional violations is the Evans incident.  However, the SAC does not allege that Sheriff Donnelly was aware of the assertions of misconduct with respect to the Evans incident prior to Plaintiffs' arrests.  The SAC also fails to allege any facts that, if true, would raise a reasonable inference that Sheriff Donnelly had contemporaneous knowledge of the Defendant Officers' conduct in connection with the arrests of Doneker and Romanek.  Accordingly, we conclude that the SAC does not plausibly allege facts that Sheriff Donnelly "had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  C.H., 226 F.3d at 202.  Consequently, we further conclude that the SAC fails to adequately allege a § 1983 claim against Sheriff Donnelly for supervisory liability based on his failure to train and supervise his deputies.  Therefore, as we have already concluded that the SAC fails to adequately plead a § 1983 claim against Sheriff Donnelly for supervisory liability based on his maintenance of a policy of retaliation and his failure to adopt necessary policies, we grant Sheriff Donnelly's Motion to Dismiss Count Three.

## IV.    CONCLUSION

For the reasons stated above, we grant both Motions to Dismiss Count Three with prejudice.[2]  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova_____
John R. Padova, J.

---

[2] In general, when a complaint is vulnerable to dismissal pursuant to a Rule 12(b)(6) motion, we allow a curative amendment, unless such amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citation omitted).  However, in this case, we have already permitted Plaintiffs to amend Count Three.  See Doneker v. Cnty. of Bucks, Civ. A. No. 13-1534, 2013 WL 4511630, at *7 (E.D. Pa. Aug. 26, 2013) (dismissing Count Three of the First Amended Complaint without prejudice, and with leave to file an amended complaint stating cognizable § 1983 claims against the Municipal Defendants and Sheriff Donnelly). Therefore, we conclude that any additional curative amendment by Plaintiffs in this case would be futile and deny Plaintiffs leave to amend Count Three again.